

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | **Case:**2:19-cr-20285<br>**Judge:** Goldsmith, Mark A.<br>**MJ:** Stafford, Elizabeth A. |
| v. | **Filed:** 05-07-2019 At 03:42 PM<br>**SEALED MATTER (af)** |
| NABIL FAKIH, R.Ph., | VIO.: 18 U.S.C. § 1349 |
| | 18 U.S.C. § 1347 |
| Defendant. | 18 U.S.C. § 2 |
| | 18 U.S.C. § 981 |
| _____/ | 18 U.S.C. § 982 |

## INDICTMENT

**THE GRAND JURY CHARGES**:

## GENERAL ALLEGATIONS

At all times relevant to this Indictment:

### The Medicare and Medicaid Programs

1.     The Medicare program ("Medicare") was a federal health care program providing benefits to persons who were 65 years of age or older or disabled. Medicare was administered by the Centers for Medicare and Medicaid Services ("CMS"), a federal agency under the United States Department of Health and Human Services.  Individuals who received benefits under Medicare were referred to as Medicare "beneficiaries."

2.     Medicare covered different types of benefits and was separated into different program "parts."  Medicare Part D subsidized the cost of prescription drugs

for Medicare beneficiaries in the United States.  Generally, Medicare Part D covered part or all of the costs of prescription drugs dispensed to a Medicare beneficiary if, among other requirements, the prescription drugs were medically necessary and ordered by a physician.

3.    In order to receive Medicare Part D benefits, a beneficiary enrolled in one of several Medicare drug plans.  Medicare drug plans were operated by private health care insurance companies approved by Medicare.  Those companies were often referred to as drug plan "sponsors."  A beneficiary in a Medicare drug plan could fill a prescription at a pharmacy and use his or her plan to pay for some or all of the prescription drugs.

4.    Medicare, through CMS, compensated the Medicare drug plan sponsors for providing prescription drug benefits to beneficiaries.  Medicare paid the sponsors a monthly fee for each Medicare beneficiary of the sponsors' plans.  Such payments were called capitation fees.  The capitation fee was adjusted periodically based on various factors, including the beneficiary's medical conditions.  In addition, in some cases where a sponsor's expenses for a beneficiary's prescription drugs exceeded that beneficiary's capitation fee, Medicare reimbursed the sponsor for a portion of those additional expenses.

5.    The Michigan Medicaid program ("Medicaid") was a federal and state funded health care program providing benefits to individuals and families who met

2

specified financial and other eligibility requirements, and certain other individuals who lacked adequate resources to pay for medical care. CMS was responsible for overseeing the Medicaid program in participating states, including Michigan. Individuals who received benefits under Medicaid were referred to as Medicaid "beneficiaries."

6.     Medicaid covered the costs of certain medical services, products, and benefits, including prescription drug benefits, for Medicaid beneficiaries. Generally, Medicaid covered part or all of the costs of prescription drugs dispensed to a Medicaid beneficiary if, among other requirements, the prescription drugs were medically necessary and ordered by a physician.

7.     Medicaid paid for covered services either through what was called Medicaid "fee-for-service" or through Medicaid health plans.

8.     Medicare, Medicare drug plan sponsors, Medicaid, and Medicaid health plans were "health care benefit program[s]," as defined by Title 18, United States Code, Section 24(b).

### The Private Health Insurance Program

9.     Blue Cross and Blue Shield of Michigan ("BCBS") was a nonprofit, privately operated insurance company authorized and licensed to do business in the state of Michigan. BCBS provided health care benefits, including prescription drug

3

benefits, to member entities and individuals. Individuals insured by BCBS were referred to as BCBS "members."

10. BCBS had agreements with participating providers, including pharmacies, to furnish medical services to BCBS members.

11. BCBS was a "health care benefit program," as defined by Title 18, United States Code, Section 24(b).

### Pharmacy Benefit Managers

12. Pharmacy benefit managers ("PBMs") managed prescription drug benefits provided by Medicare (through Medicare drug plan sponsors), Medicaid health plans, and BCBS. PBMs received, adjudicated, and paid claims on behalf of the health care benefit programs.

13. After a pharmacy dispensed a prescription drug to a beneficiary or member, the pharmacy submitted a claim, typically electronically, to the PBM acting on behalf of the specific health care benefit program. The PBM, on behalf of the health care benefit program, reimbursed the pharmacy, typically electronically, through direct deposits into accounts held, and previously identified, by the pharmacy.

14. CVS Caremark and Express Scripts were two of several PBMs that managed prescription drug benefits for Medicare (through Medicare drug plan sponsors) and Medicaid health plans. Express Scripts managed prescription drug

4

benefits for BCBS.  CVS Caremark processed and adjudicated claims in Arizona.
Express Scripts processed and adjudicated claims outside the state of Michigan.

### The Pharmacies

15.     NFH, Inc. d/b/a Dearborn Heights Pharmacy, DHP, and DHP Pharmacy
("Dearborn") was a pharmacy and Michigan corporation located at 25524 Ford
Road, Dearborn Heights, MI 48127.

16.     Dial Drugs, Inc. d/b/a MEDLINK, LTC ("Dial") was a pharmacy and
Michigan corporation located at 8226 N. Merriman, Westland, Michigan 48185.

### The Defendant

17.     Defendant NABIL FAKIH, a resident of Wayne County, Michigan, was
a licensed pharmacist in Michigan and the owner, and pharmacist-in-charge of
Dearborn. NABIL FAKIH was a co-owner of Dial.

## COUNT 1
### Conspiracy to Commit Health Care Fraud and Wire Fraud
### (18 U.S.C. § 1349)

18.     Paragraphs 1 through 17 of the General Allegations section of this
Indictment are re-alleged and incorporated by reference as though fully set forth
herein.

19.     From at least in or around January 2011, and continuing through in or
around the present, the exact dates being unknown to the Grand Jury, in Wayne
County, in the Eastern District of Michigan, and elsewhere, NABIL FAKIH and

others did willfully and knowingly combine, conspire, confederate, and agree to commit certain offenses against the United States, that is:

(a)   to violate Title 18, United States Code, Section 1347, that is, to knowingly and willfully execute a scheme and artifice to defraud health care benefit programs affecting commerce, as defined in Title 18, United States Code, Section 24(b), that is, Medicare, Medicare drug plan sponsors, Medicaid, Medicaid health plans, and BCBS, and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of, said health care benefit programs, in connection with the delivery of and payment for health care benefits, items, and services; and

(b)   to violate Title 18, United States Code, Section 1343, that is, to knowingly and with the intent to defraud, devise and intend to devise a scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing that the pretenses, representations, and promises were false and fraudulent when made, and did knowingly transmit and cause to be transmitted, by means of wire communication in interstate

commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice.

## Purpose of the Conspiracy

20.   It was a purpose of the conspiracy for NABIL FAKIH and others to unlawfully enrich themselves and others by, among other things: (a) submitting, and causing the submission of, false and fraudulent claims to Medicare, Medicare drug plan sponsors, Medicaid, Medicaid health plans, and BCBS through Dial; (b) concealing, and causing the concealment of, the submission of false and fraudulent claims to Medicare, Medicare drug plan sponsors, Medicaid, Medicaid health plans, and BCBS, and the receipt and transfer of the proceeds of the fraud; and (c) diverting fraud proceeds for the personal use and benefit of the defendant and others.

## Manner and Means of the Conspiracy

The manner and means by which the defendant and others sought to accomplish the purpose of the conspiracy included, among others, the following:

21.   NABIL FAKIH maintained national provider identifiers for Dial in order to submit claims to Medicare, Medicare drug plan sponsors, Medicaid, Medicaid health plans, and BCBS.

22.   NABIL FAKIH, and a co-conspirator, on behalf of Dial, entered into pharmacy provider agreements with CVS Caremark and Express Scripts, among other PBMs.

7

23.     NABIL FAKIH and others submitted, and caused the submission of claims to Medicare, Medicare drug plan sponsors, Medicaid, Medicaid health plans, and BCBS that falsely and fraudulently represented various health care benefits, primarily prescription drugs, were medically necessary, prescribed by a doctor and provided to beneficiaries by Dial.

24.     NABIL FAKIH and others submitted, and caused the submission of, false and fraudulent claims to Medicare, Medicare drug plan sponsors, Medicaid, Medicaid health plans, and BCBS, via interstate wires and on behalf of Dial, for prescription drugs that were not dispensed.

25.     NABIL FAKIH and others submitted, and caused the submission of, false and fraudulent claims to Medicare and Medicare drug plan sponsors, via interstate wires and on behalf of Dial, for prescription drugs purportedly dispensed to persons who were, in fact, deceased.

26.     As a result of such false and fraudulent claims, Medicare and Medicaid prescription drug plan sponsors, through their PBMs, made overpayments funded by the Medicare Part D program and Medicaid to Dial, of approximately $569,670.

27.     As a result of such false and fraudulent claims, BCBS prescription drug plan sponsors, through their PBMs, made overpayments funded by BCBS to Dial, of approximately $558,079.

28.     NABIL FAKIH and others caused the transfer and disbursement of illicit proceeds derived from the fraudulent scheme to themselves and others.

All in violation of Title 18, United States Code, Section 1349.

## COUNT 2
### Health Care Fraud
### (18 U.S.C. §§ 1347 and 2)

29.     Paragraphs 1 through 17 of the General Allegations section of this Indictment are re-alleged and incorporated by reference as though fully set forth herein.

30.     On or about the dates set forth below, in Wayne County, in the Eastern District of Michigan, and elsewhere, NABIL FAKIH did knowingly and willfully execute, and attempt to execute, a scheme and artifice to defraud health care benefit programs affecting commerce, as defined in Title 18, United States Code, Section 24(b), that is, Medicare and Medicare drug plan sponsors, and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of, said health care benefit programs, in connection with the delivery of and payment for health care benefits, items, and services.

**Purpose of the Scheme and Artifice**

31.     It was a purpose of the scheme and artifice for NABIL FAKIH to unlawfully enrich himself by, among other things: (a) submitting, and causing the

9

submission of, false and fraudulent claims to Medicare and Medicare drug plan sponsors through Dearborn; (b) concealing, and causing the concealment of, the submission of false and fraudulent claims to Medicare and Medicare drug plan sponsors, and the receipt and transfer of the proceeds of the fraud; and (c) diverting fraud proceeds for the personal use and benefit of the defendant and others.

### The Scheme and Artifice

32.    NABIL FAKIH maintained national provider identifiers for Dearborn in order to submit claims to Medicare, Medicare drug plan sponsors, Medicaid, Medicaid health plans, and BCBS.

33.    NABIL FAKIH, on behalf of Dearborn, entered into pharmacy provider agreements with CVS Caremark and Express Scripts, among other PBMs.

34.    NABIL FAKIH submitted, or caused the submission of, claims to Medicare, Medicare drug plan sponsors, Medicaid, Medicaid health plans, and BCBS that falsely and fraudulently represented various health care benefits, primarily prescription drugs, were medically necessary, prescribed by a doctor and provided to beneficiaries by Dearborn.

35.    NABIL FAKIH submitted, or caused the submission of, false and fraudulent claims to Medicare, Medicare drug plan sponsors, Medicaid, Medicaid health plans, and BCBS, via interstate wires and on behalf of Dearborn, for prescription drugs that were not dispensed.

36.     NABIL FAKIH submitted, or caused the submission of, false and fraudulent claims to Medicare and Medicare drug plan sponsors, via interstate wires and on behalf of Dearborn, for prescription drugs purportedly dispensed to persons who were, in fact, deceased.

37.     As a result of such false and fraudulent claims, Medicare and Medicaid prescription drug plan sponsors, through their PBMs, made overpayments funded by the Medicare Part D program and Medicaid to Dearborn, of approximately $3,665,771.

38.     As a result of such false and fraudulent claims, BCBS prescription drug plan sponsors, through their PBMs, made overpayments funded by BCBS to Dearborn, of approximately $1,432,810.

39.     NABIL FAKIH caused the transfer and disbursement of illicit proceeds derived from the fraudulent scheme to himself and others.

All in violation of Title 18, United States Code, Sections 1347 and 2.

## COUNTS 3 and 4
### Health Care Fraud
### (18 U.S.C. §§ 1347 and 2)

40.     Paragraphs 1 through 17 of the General Allegations section of this Indictment are re-alleged and incorporated by reference as though fully set forth herein.

11

41.     On or about the dates set forth below, in Wayne County, in the Eastern District of Michigan, and elsewhere, NABIL FAKIH did knowingly and willfully execute, and attempt to execute, a scheme and artifice to defraud health care benefit programs affecting commerce, as defined in Title 18, United States Code, Section 24(b), that is, Medicare and Medicare drug plan sponsors, and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of, said health care benefit programs, in connection with the delivery of and payment for health care benefits, items, and services.

## Purpose of the Scheme and Artifice

42.     It was a purpose of the scheme and artifice for NABIL FAKIH and others to unlawfully enrich himself by, among other things: (a) submitting, and causing the submission of, false and fraudulent claims to Medicare and Medicare drug plan sponsors through Dial; (b) concealing, and causing the concealment of, the submission of false and fraudulent claims to Medicare and Medicare drug plan sponsors, and the receipt and transfer of the proceeds of the fraud; and (c) diverting fraud proceeds for the personal use and benefit of the defendant and others.

## The Scheme and Artifice

43.     Paragraphs 21 through 28 of Count One of this Indictment are re-alleged and incorporated by reference as though fully set forth herein as a description of the scheme and artifice.

## Acts in Execution of the Scheme and Artifice

44.     On or about the dates set forth below, in Wayne County, in the Eastern District of Michigan, NABIL FAKIH did knowingly and willfully execute, and attempt to execute, a scheme and artifice to defraud health care benefit programs affecting commerce, as defined in Title 18, United States Code, Section 24(b), that is, Medicare and Medicare drug plan sponsors, and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of, said health care benefit programs, in connection with the delivery of and payment for health care benefits, items, and services, in that NABIL FAKIH submitted and caused the submission of false and fraudulent claims for payment and falsely represented that Dial provided prescription medications to Medicare beneficiaries:

| Count | Program | Beneficiary | Beneficiary Date of Death | Claim Received and Service Date | Description of Prescription Medication | Claim/ Script ID Number |
|-------|---------|-------------|---------------------------|---------------------------------|----------------------------------------|--------------------------|
| 3 | Medicare | J.A. | 11/19/14 | 11/20/14 | Clozapine | 442767746 45 |

| Count | Program | Beneficiary | Beneficiary Date of Death | Claim Received and Service Date | Description of Prescription Medication | Claim/ Script ID Number |
|---|---|---|---|---|---|---|
| 4 | Medicare | Y.S. | 2/3/17 | 2/18/17 | Alprazolam | 628988609 11 |

All in violation of Title 18, United States Code, Sections 1347 and 2.

## CRIMINAL FORFEITURE

45.    The above allegations contained in this Indictment are incorporated by reference as if set forth fully herein for the purpose of alleging criminal forfeiture to the United States of America of certain property in which NABIL FAKIH has an interest.

46.    Upon conviction of a violation alleged in this Indictment, NABIL FAKIH shall forfeit to the United States any property, real or personal, that constitutes or is derived, directly or indirectly, from proceeds and/or gross proceeds traceable to the commission of such violations, pursuant to 18 U.S.C. § 982(a)(7) and 18 U.S.C. § 981(a)(1)(C), as incorporated by 28 U.S.C. § 2461.

47.    *Substitute Assets*:  If the property described above as being subject to forfeiture, as a result of any act or omission of the defendant:

a.)    cannot be located upon the exercise of due diligence;

b.)    has been transferred or sold to, or deposited with, a third party;

c.)    has been placed beyond the jurisdiction of the Court;

14

d.)     has been substantially diminished in value; or

e.)     has been commingled with other property that cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to 21 U.S.C. § 853(p) as incorporated by 18 U.S.C. § 982(b) and/or 28 U.S.C. § 2461, to seek to forfeit any other property of defendant, up to the value of the forfeitable property described above.

48.     *Money Judgment*:  The government shall also seek a forfeiture money judgment from the defendant for a sum of money representing the total amount of proceeds obtained as a result of defendant's violations of 18 U.S.C. §§ 1347 and 1349, as alleged in this Indictment.

THIS IS A TRUE BILL.

s/Grand Jury Foreperson
Grand Jury Foreperson

MATTHEW SCHNEIDER
UNITED STATES ATTORNEY


s/Wayne F. Pratt
WAYNE F. PRATT
Chief, Health Care Fraud Unit
Assistant United States Attorney
211 West Fort Street, Suite 2001
Detroit, Michigan 48226
(313) 226-2548
wayne.pratt@usdoj.gov

s/Malisa Dubal
MALISA DUBAL
Assistant Chief
Criminal Division, Fraud Section
U.S. Department of Justice
1400 New York Avenue, N.W.
Eighth Floor
Washington, D.C. 20005
(202) 660-2001
Malisa.dubal@usdoj.gov


s/Steven Scott
STEVEN SCOTT
Trial Attorney
Criminal Division, Fraud Section
U.S. Department of Justice
1400 New York Avenue, N.W.
Eighth Floor
Washington, D.C. 20005
(202) 262-6763
Steven.scott@usdoj.gov

Dated: May 7, 2019

| United States District Court<br>Eastern District of Michigan | **Criminal Case Cover** | Case:2:19-cr-20285<br>Judge: Goldsmith, Mark A.<br>MJ: Stafford, Elizabeth A.<br>Filed: 05-07-2019 At 03:42 PM<br>SEALED MATTER (af) |
|---|---|---|

NOTE: It is the responsibility of the Assistant U.S. Attorney signing this form to complete

## Companion Case Information

| | Companion Case Number: |
|---|---|
| This may be a companion case based upon LCrR 57.10 (b)(4)[1]: | Judge Assigned: |
| ☐ Yes      ☒ No | AUSA's Initials: |

**Case Title:** USA v. Nabil Fakih

**County where offense occurred :** Wayne County

**Check One:**     ☒ Felony          ☐ Misdemeanor          ☐ Petty

     ✓ Indictment/____ Information --- **no** prior complaint.

     ____ Indictment/____ Information --- based upon prior complaint [**Case number:**      ]

     ____ Indictment/____ Information --- based upon **LCrR 57.10 (d)** *[Complete Superseding section below]*.

## Superseding Case Information

**Superseding to Case No:** _____          **Judge:** _____

     ☐ Corrects errors; no additional charges or defendants.
     ☐ Involves, for plea purposes, different charges or adds counts.
     ☐ Embraces same subject matter but adds the additional defendants or charges below:

| **Defendant name** | **Charges** | **Prior Complaint (if applicable)** |
|---|---|---|
| | | |

---

**Please take notice that the below listed Assistant United States Attorney is the attorney of record for the above captioned case.**

May 7, 2019
Date

*[signature]*

Steven Scott, Trial Attorney
211 West Fort Street, Detroit, MI 48226
Phone: (202) 262-6763
Fax:    (313) 226-0816
E-Mail address: Steven.Scott@usdoj.gov
Attorney Bar #:  ILLINOIS 6306957

---

[1] Companion cases are matters in which it appears that (1) substantially similar evidence will be offered at trial, or (2) the same or related parties are present, and the cases arise out of the same transaction or occurrence. Cases may be companion cases even though one of them may have already been terminated.